DIETZ, Judge.
 

 *293
 
 Defendant Mark Edwin Jones appeals his convictions for first degree sexual offense and taking indecent liberties with a child. Jones
 
 *294
 
 argues that the trial court erred by denying his motion for a continuance because the district attorney did not file an adequate trial calendar ten or more days before trial, in violation of N.C. Gen. Stat. § 7A-49.4(e). Jones also argues that the trial court erred in denying his request to present a rebuttal witness to respond to testimony from the State's witnesses.
 

 As explained below, because the case was scheduled for trial many months in advance and then continued several times, even assuming the trial calendar submitted by the district attorney was inadequate under N.C. Gen. Stat. § 7A-49.4(e), Jones must establish that he was prejudiced by the failure to receive sufficient notice. He has not done so here.
 

 With respect to the rebuttal witness, that decision is one left to the trial court's discretion and, because the trial court permitted other testimony that established the same facts Jones sought from his rebuttal witness, Jones has not shown that the trial court's decision was so manifestly arbitrary that it could not have been the result of a reasoned
 
 *756
 
 decision. We therefore find no prejudicial error in the trial court's judgment.
 

 Facts and Procedural History
 

 On 4 April 2013, Defendant Mark Jones went to work at 8:00 a.m. Jones's wife, Betty, stayed at home with their youngest child. At 9:15 a.m., Betty's sister dropped off her two children, Millie and Collin
 
 [1]
 
 , for Betty to babysit. Betty watched the children from 9:15 a.m. until she had to leave to drive her afternoon school bus route sometime between 2:30 and 2:45 p.m. After Betty left, the children were alone with Jones for a short period of time before Millie and Collin's mother arrived to pick them up around 2:45 p.m.
 

 When Millie's mother picked her up, Millie was upset. Later that evening, Millie began crying. When her mother asked her what was wrong, Millie indicated that Jones had removed her underwear and touched her private area, put his finger in her "hole," and showed her his penis. Millie's parents contacted the police to report the incident.
 

 On 8 April 2013, Millie went to a regularly scheduled appointment with a counselor who treated her for anxiety. The counselor observed that Millie was upset and asked Millie if she wanted to talk. Millie told the counselor that Jones had pulled her pants down and "stuck his finger in her hole and that it hurt."
 

 On 10 June 2013, Jones was indicted for taking indecent liberties with a child and first degree sexual offense with a child by an adult. The
 
 *295
 
 case went to trial on 25 July 2017. Jones moved to continue the trial, arguing that he received insufficient notice of the trial date under N.C. Gen. Stat. § 7A-49.4(e) and that he did not have time to contact or subpoena certain witnesses. After hearing arguments, the trial court ruled that "in my discretion I'm going to deny the request to continue."
 

 At trial, Betty testified that she typically left for her afternoon bus route at 2:30 p.m., but that on 4 April 2013, she left closer to 2:45 p.m. because her sister had not yet arrived to pick up her kids. Jones testified that, after Betty left, he played guitar for the children while sitting on his bed. He stated that he only played about one song before Millie's mother arrived. Jones testified that Millie was upset because she wanted one of Jones's guitar picks. He denied ever being alone with Millie or touching her.
 

 Millie testified that she went into Jones's bedroom and was alone with him. She testified that Jones removed her pants and underwear and touched her "privates on the inside" and outside with his finger. Millie's mother testified about what Millie reported to her. She explained that Millie, who had a speech impediment, had clarified that she was talking about Jones's "dick," not his guitar pick.
 

 At the close of the State's case, Jones requested to add his father as a rebuttal witness to testify that Jones was at work at the time Millie arrived at his home the morning of the alleged crime. Jones argued that this rebuttal testimony was necessary because Millie and her mother both had unexpectedly testified that Jones was home (rather than away at work) at that time. The trial court denied the request.
 

 On 26 July 2017, the jury convicted Jones of both charges. The trial court sentenced him to 300 to 420 months in prison for first degree sexual offense and 16 to 29 months in prison for indecent liberties. Jones also was ordered to enroll in lifetime satellite-based monitoring and to register as a sex offender for life. Jones timely appealed.
 

 Analysis
 

 I. Denial of Motion for Continuance
 

 Jones first argues that the trial court erred in denying his motion for a continuance because his counsel was not given sufficient notice of trial in violation of N.C. Gen. Stat. § 7A-49.4(e). As explained below, we reject this argument because Jones has not shown that he was prejudiced by the trial court's error.
 

 *296
 
 Section 7A-49.4 provides that "[c]riminal cases in superior court shall be calendared by the district attorney at administrative settings according to a criminal case docketing plan" which "shall, at a minimum, comply with the provisions of this section."
 

 *757
 
 N.C. Gen. Stat. § 7A-49.4(a). Subsection (e) of the statute requires that "[n]o less than 10 working days before cases are calendared for trial, the district attorney shall publish the trial calendar."
 
 Id.
 
 § 7A-49.4(e). This "trial calendar" is required to "schedule the cases in the order in which the district attorney anticipates they will be called for trial and should not contain cases that the district attorney does not reasonably expect to be called for trial."
 
 Id.
 

 In his motion for continuance, Jones argued that he did not receive the minimum "10 working days" notice of trial required by the statute. In July 2016, the trial court entered an order setting the case for trial on 14 November 2016 but the trial was continued-apparently several times, from trial terms in November 2016, January 2017, April 2017, and June 2017, until the eventual 24 July 2017 trial date. The case also was placed on what the State calls a "trial session calendar" more than 10 days before the trial, but that calendar, titled "Superior/Criminal - Trial Matters" included more than a dozen criminal cases set for trial on 24 July 2017, all listed in alphabetical order by the defendants' last names. Jones contends that this calendar does not comply with section 7A-49.4(e) because it does not list cases "in the order in which the district attorney anticipates they will be called for trial" and, given the number of complicated criminal cases on the list, necessarily includes "cases that the district attorney does not reasonably expect to be called for trial" that day.
 
 Id.
 

 Instead, Jones asserts that the "true trial calendar" necessary under section 7A-49.4(e) was a document filed 11 July 2017 and emailed to Jones's counsel on 12 July 2017. That document, titled "Trial Order the Prosecutor Anticipates Cases to be Called," listed Jones's case as the first case for trial on 24 July 2017. Jones contends that this trial order, because it identifies the cases actually to be tried on 24 July 2017 and lists them in the order in which they will be called for trial, is the "trial calendar" required by section 7A-49.4(e). And, Jones contends, he did not receive the necessary 10 days' notice of this calendar before trial, thus entitling him to a continuance.
 

 We agree with Jones that the trial order entered 11 July 2017 is the only "trial calendar" that complies with N.C. Gen. Stat. § 7A-49.4(e), and it was not published 10 or more days before the trial date. But, as explained below, Jones has not shown that he was prejudiced by the
 
 *297
 
 failure to receive the full 10-day notice and we therefore find no prejudicial error.
 

 Jones first contends that he is not required to show prejudice because a defendant's right to 10-day notice of trial under N.C. Gen. Stat. § 7A-49.4(e) is analogous to the right to a week-long notice period between arraignment and trial under N.C. Gen. Stat. § 15A-943, which states that a defendant "may not be tried without his consent in the week in which he is arraigned." Our Supreme Court has held that a violation of this notice period between arraignment and trial is presumed prejudicial.
 
 See
 

 State v. Shook
 
 ,
 
 293 N.C. 315
 
 , 319,
 
 237 S.E.2d 843
 
 , 847 (1977).
 

 But there are key distinctions between the week-long notice period in section 15A-943 and the 10-day notice period in section 7A-49.4(e). First, the language in section 15A-943(b) provides that a defendant "may not be tried
 
 without his consent
 
 in the week in which he is arraigned." (Emphasis added). Our Supreme Court held that this language "vests a defendant with a right, for by its terms it requires his consent before a different procedure can be used."
 
 Shook
 
 ,
 
 293 N.C. at 319
 
 ,
 
 237 S.E.2d at 846-47
 
 . The Court reasoned that "[t]o require a defendant to show prejudice when asserting the violation of this statutory right which he has insisted upon at trial would be manifestly contrary to the intent of the legislature."
 
 Id.
 
 at 319,
 
 237 S.E.2d at 847
 
 . Here, by contrast, the requirements in section 7A-49.4(e) for setting and publishing the trial calendar do not expressly vest any rights in the defendant. And, notably, other provisions in section 7A-49.4, such as subsection (f) governing the order of cases called for trial, expressly vest rights in the defendant in the same manner as section 15A-943.
 

 In addition, the circumstances of this case highlight why a prejudice analysis is appropriate here, while inappropriate for the week-long notice period between arraignment
 
 *758
 
 and trial. During the week of arraignment, the defendant has only just announced the decision to plead not guilty and proceed to trial. The week-long notice period thus provides a minimum amount of time that the defendant will be permitted to prepare following the decision to go to trial. By contrast, the trial calendar often comes long after the defendant has made the decision to plead not guilty and go to trial; it is intended to provide time for the defendant to secure witnesses and take other steps that may be necessary once a specific trial date is set. Because the defendant may already have had ample time to prepare for trial, and because the nature of the case may mean the defendant did not need more time to prepare, it is appropriate to ask whether the lack of the minimum 10-day notice period actually prejudiced the defendant.
 
 *298
 
 Here, for example, on 12 July 2016-more than a year before the trial in this case-the trial court entered an order stating that "the trial of this matter is hereby scheduled for November 14, 2016, subject to further motions for orders continuing this matter as may be agreed upon by the State and Defendant or ordered by the Court." The trial date was continued from that "November term" for nearly six months, although the record does not indicate whether those continuances were done by agreement of the parties or by order of the Court.
 

 In any event, Jones certainly knew for months that his case would soon be called for trial, and thus knew he should prepare. In this context, it does not appear "manifestly contrary to the intent of the legislature" to require a showing of prejudice; to the contrary, this appears to be the sort of circumstance in which our legislature would expect a showing of prejudice before finding the violation amounted to reversible error compelling a new trial.
 
 See
 
 N.C. Gen. Stat. § 15A-1443(a) ;
 
 State v. Phachoumphone
 
 , --- N.C. App. ----, ----,
 
 810 S.E.2d 748
 
 , 752 (2018) ;
 
 State v. Love
 
 ,
 
 177 N.C. App. 614
 
 , 623,
 
 630 S.E.2d 234
 
 , 241 (2006). Accordingly, we hold that a violation of N.C. Gen. Stat. § 7A-49.4(e) is reversible error only upon a showing of prejudice to the defendant.
 

 Jones also contends that, even if he must show prejudice, he has done so because he would have been able to contact and subpoena additional witnesses if he was allowed more time to prepare for trial. Specifically, Jones argues that he would have been able to make contact with the physician who performed the physical exam of Millie and with the person who performed the forensic interview of Millie.
 

 But it is not enough to simply assert that there were witnesses Jones might have contacted if given more time. To show prejudice, a defendant asserting a violation of N.C. Gen. Stat. § 7A-49.4(e) must show that, had that statutory provision not been violated, there is a reasonable possibility that the outcome of the trial would have been different. N.C. Gen. Stat. § 15A-1443(a). This, in turn, means that the defendant must explain what testimony or evidence would have been admitted had the continuance been granted. In other words, as our Supreme Court has explained, the defendant must show what he "expected to attempt to prove through these witnesses" that would affect the jury's determination of guilt.
 
 State v. Branch
 
 ,
 
 306 N.C. 101
 
 , 105,
 
 291 S.E.2d 653
 
 , 657 (1982). Without that evidence, an appellate court cannot assess prejudice because "we can judicially know only what appears of record on appeal and will not speculate as to matters outside the record."
 

 Id.
 

 Jones argues that, with more time, he might have been able to call as witnesses the physician who examined Millie and the investigator
 
 *299
 
 who conducted a "forensic interview" with Millie. Jones argues that these witnesses could have established "how much [Millie's] story had changed over time, how much the story was coached out of the child, and whether the interviewer had already heard a version of the story from another adult." But this is all speculation. Jones has not shown that these witnesses would have offered the sort of testimony he imagines. Likewise, he has not asserted that the trial court denied him the opportunity to make an offer of proof or build a record of what testimony these witnesses actually would have provided-although there has been ample time to do so since the trial court's ruling
 
 *759
 
 denying the request for a continuance. Because Jones has not shown what testimony these witnesses would provide that might have impacted the outcome of the trial, we cannot conclude that Jones was prejudiced by the trial court's decision not to continue it. We thus find no prejudicial error.
 
 [2]
 

 II. Denial of Request for Rebuttal Witness
 

 Jones also argues that the trial court erred in denying his request to add his father as a rebuttal witness to rebut evidence presented by the State indicating that Jones was at home on the morning of 4 April 2013 when Millie was dropped off. We disagree.
 

 "Where one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though such latter evidence would be incompetent or irrelevant had it been offered initially."
 
 State v. Albert
 
 ,
 
 303 N.C. 173
 
 , 177,
 
 277 S.E.2d 439
 
 , 441 (1981). A trial court's decision on whether to admit rebuttal evidence will not be overturned "absent a showing of gross abuse of discretion."
 
 State v. Anthony
 
 ,
 
 354 N.C. 372
 
 , 421,
 
 555 S.E.2d 557
 
 , 588 (2001). "In determining relevant rebuttal evidence, we grant the trial court great deference and we do not disturb its rulings absent an abuse of discretion and a showing that the ruling was so arbitrary that it could not have been the result of a reasoned decision."
 
 Williams v. CSX Transp., Inc.
 
 ,
 
 176 N.C. App. 330
 
 , 338,
 
 626 S.E.2d 716
 
 , 724 (2006) (citations omitted). Additionally, "[e]videntiary
 
 *300
 
 errors are harmless unless a defendant proves that absent the error a different result would have been reached at trial."
 
 State v. Ferguson
 
 ,
 
 145 N.C. App. 302
 
 , 307,
 
 549 S.E.2d 889
 
 , 893 (2001).
 

 After Millie and her mother unexpectedly gave testimony indicating that Jones was at home when Millie's mother dropped her off on the morning of 4 April 2013, Jones requested to present rebuttal testimony from his father, who would have testified that Jones was at work with him at the time Millie was dropped off. The trial court denied that request. But the Court permitted Jones to present other evidence rebutting that testimony, including testimony from both Jones and his wife. More importantly, no party disputes that, whether or not Jones was at home that morning with Millie, he was home alone with the children (at least for a short time) in the afternoon. The State contends that it was during this time, not in the morning, that the crimes occurred. Thus, the trial court reasonably determined that the requested rebuttal testimony was repetitive and of limited relevance to the issues at trial.
 
 See
 

 State v. Reid,
 

 204 N.C. App. 122
 
 , 126,
 
 693 S.E.2d 227
 
 , 231 (2010) ;
 
 State v. Robinson
 
 ,
 
 355 N.C. 320
 
 , 333-34,
 
 561 S.E.2d 245
 
 , 254 (2002). Because this decision was not manifestly arbitrary and unreasonable, it was within the trial court's discretion and we cannot disturb it on appeal.
 
 Anthony
 
 ,
 
 354 N.C. at 421
 
 ,
 
 555 S.E.2d at 588
 
 .
 

 Conclusion
 

 For the reasons discussed above, we find no prejudicial error in part and no error in part in the trial court's judgments.
 

 NO PREJUDICIAL ERROR IN PART; NO ERROR IN PART.
 

 Judges BRYANT and ARROWOOD concur.
 

 [1]
 

 We use pseudonyms to protect the juveniles' identities.
 

 [2]
 

 Jones also argues that the State refused to turn over "the prosecution's notes from its interviews with Millie." But the trial transcript indicates that the State declined to produce those notes not because Jones had not asked for them in time, but because the State determined that, in those interviews, Millie did not "make any additional disclosures or make any statements that would be materially different than what has already been included in discovery." In other words, the State did not intend to turn over those notes even if the trial court continued the trial. If Jones believes the State improperly withheld those notes, and this was error, that is a separate argument from the one Jones asserts in this appeal. N.C. R. App. P. 28(b)(6).